In re Leonard WEINBAUM, Bankrupt.

### NATIONAL AMERICAN CORPORATION, Plaintiff/Appellee,

v.

### Leonard WEINBAUM, Defendant/Appellant.

80 Civ. 2679.

United States District Court, E. D. New York.

April 27, 1981.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

This is an appeal from a decision rendered by Chief Judge Albert Parente of the Bankruptcy Court denying the discharge of the bankrupt, Leonard Weinbaum.[1] ("Weinbaum"). After a hearing on this adversary proceeding which was commenced by a creditor, National American Company ("National American"), Judge Parente concluded that Weinbaum's discharge must be denied on the following basis: (1) Weinbaum's gift to his son-in-law and his daughter of 175,000 shares of National American stock within several weeks of filing for bankruptcy violated section 14(c)(4) of the Bankruptcy Act in that Weinbaum intended "to hinder, delay or defraud his creditors" by the transfer; and (2) Weinbaum "knowingly and fraudulently [made] a false oath ... [in a] ... bankruptcy proceeding," in violation of section 14(c)(1) of the Bankruptcy Act. After reviewing the record on appeal, this court concludes that Judge Parente's findings of fact were not clearly erroneous and that his application of the law was proper in all

---

1. Judge Parente denied the discharge under section 14(c)(1) and (4) of the Bankruptcy Act, 11 U.S.C. 32 (repealed effective October 1, 1979). Those subsections in pertinent part are as follows:

   The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18; or ... (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or con-

cealed, or permitted to be removed, destroyed or concealed, any of his property with intent to hinder, delay, or defraud his creditors....

Section 14(c)(1) cross references to 18 U.S.C. § 152 which provides in pertinent part as follows:

   Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding.... shall be fined not more than $5,000 or imprisoned not more than five years, or both.

respects. Accordingly, the decision of the bankruptcy court is affirmed.

The relationship between Weinbaum and National American commenced in 1976 when Weinbaum, the owner of fifty per cent of Edward J. Moore Sons, Inc., contracted to sell and did sell his interest in this company to National American in exchange for 275,000 shares of National American's restricted stock with 175,000 shares being taken in Weinbaum's name and 100,000 shares being taken in the name of Weinbaum's wife, Shirley Weinbaum. Thereafter, in early 1977, Weinbaum instituted suit against National American and several of its officers in the Southern District of New York alleging a breach of the 1976 contract, and requesting both money damages and an order rescinding the contract. In early September 1979, every prayer for relief, save one, was denied, and judgment was entered on counterclaims against Weinbaum in the sum of $59,000. On September 28, 1979, Weinbaum filed his petition in bankruptcy.

The dispute before this court involves the transfer of the 175,000 restricted shares of National American stock. Weinbaum maintains that he neither transferred nor concealed the stock in violation of section 14(c)(4), and that he made no false statements in any bankruptcy proceeding in violation of section 14(c)(1). It is undisputed that Weinbaum did not list the shares as an asset in his bankruptcy petition, but according to Weinbaum, he did not own the stock on the date he filed for bankruptcy, nor did he own the stock within a year of the filing date. Notwithstanding the fact that Weinbaum retained physical control over the stock until the early part of September, 1979—approximately two weeks prior to the bankruptcy filing and about the time a judgment for $59,000 was entered against him in the Southern District—Weinbaum contends that he gave the stock to his son-in-law Matthew Firman ("Firman") and his daughter, Mrs. Sharon Firman as a present

shortly after their wedding in April 1977.[2] The crux of the case, therefore, turns on two issues, to wit: (1) whether Weinbaum made a valid *inter vivos* gift, and (2) the time when that gift was effected.

There are three requisites for a proper *inter vivos* gift: donative intent, delivery to the donee, and acceptance by the donee. *Matter of Szabo*, 10 N.Y.2d 94, 217 N.Y.S.2d 593, 176 N.E.2d 395 (1961); *Matter of Van Alstyne*, 207 N.Y. 298, 100 N.E. 802 (1913). In determining whether Weinbaum actually transferred the 175,000 shares, Judge Parente examined the following factors before concluding that a valid gift was neither made nor intended:

(1) as noted, Weinbaum retained physical control over the stock for no explainable reason until September 1979, several weeks before filing for bankruptcy;

(2) in addition to retaining dominion and control over the stock, Weinbaum executed a proxy for the 175,000 shares on September 4, 1979 without asking either Mr. Firman or his daughter to sign the proxy;

(3) from the date the stock was allegedly transferred in 1977 until the actual physical transfer in September, 1979, the transfer agent was never informed of the gift although he was told to make arrangements for a sale or transfer;

(4) while the suit against National American was pending, Weinbaum allegedly transferred the stock, but he neither informed the court of the transfer nor did he amend his demand for relief, even though ownership of the stock was a requisite to rescinding the contract; and finally,

(5) in 1977, the year the gift was allegedly made, Weinbaum failed to file a federal gift tax return in violation of the Internal Revenue Code ("IRC") § 6019.

The bankrupt Weinbaum now challenges Judge Parente's conclusion on the ground that Weinbaum's course of conduct did not tend to negate an *inter vivos* gift. First, Weinbaum argues, U.C.C. § 8–309 does not

---

**2.** There was testimony from both Weinbaum and Firman that Weinbaum transferred the stock in part as a repayment for a 1974 Audi. Weinbaum states, however, that the exchange was meant not to be equal, but to be a gift.

require any notification to the transfer agent to transfer stock to another party. Second, although section 6019 of the IRC requires the filing of a gift tax return in certain circumstances, it does not negate a valid gift. Third, Weinbaum maintains that he asked Firman and his daughter if he could sign the proxy, and they agreed. Finally, Weinbaum states that he was unfamiliar with the pleadings in the suit in the Southern District, and consequently, did not know that the rescission relief was requested, and thus, he did not know that it had to be withdrawn.

The bankrupt is correct in arguing that, taken individually, these factors do not necessarily negate an *inter vivos* gift. Nonetheless, when Weinbaum's conduct is examined in the totality of the circumstances, it clearly exhibits an intention to retain both ownership and control over the 175,000 shares. *See Matter of Szabo, supra; Vincent v. Putnam*, 248 N.Y. 76, 161 N.E. 425 (1928). Moreover, Weinbaum's conduct also leads this court to the inescapable conclusion that Weinbaum specifically transferred the shares of National American in early September, 1979 to defraud his creditors.

■ While it is clear that the intent to defraud must be actual, not constructive, *In re Pioch*, 235 F.2d 903 (3d Cir. 1956); *In re Vecchione*, 407 F.Supp. 609 (E.D.N.Y.1976), Weinbaum's course of conduct, *see In re Freudmann*, 362 F.Supp. 429 (S.D.N.Y. 1973); *aff'd*, 495 F.2d 816 (2d Cir.), *cert. denied sub nom.*, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974), i. e., the continued retention of the shares, the exercise of dominion and control over the stock, and the time of the alleged transfer, clearly establishes that Weinbaum executed the transfer in September, 1979 with the specific intent to defraud his creditors. Consequently, discharge of the bankrupt must be denied under section 14(c)(4). *In re Cadarette*, 601 F.2d 648 (2d Cir. 1979); *Robinson v. Mann*, 339 F.2d 547 (5th Cir. 1965); *Weinberg v. Rubiner*, 239 F.2d 458 (6th Cir. 1956); *In re Vecchione, supra; In re Roberts*, 176 F.Supp. 361 (D.C.N.C.1959), *vacated*, 275 F.2d 943 (4th Cir. 1960). Finally, this court agrees with Judge Parente's holding that even if the transfer had taken place some time after the Firmans' wedding in 1977, the continued concealment of the transfer until September, 1979, brought the transaction within the ambit of section 14(c)(4), and thus, discharge must likewise be denied on this basis. *See In re Saphire*, 139 F.2d 34 (2d Cir. 1943); *Farmers' Savings Bank v. Allen*, 41 F.2d 208 (8th Cir. 1930).

■ Turning to the decision to deny the discharge on the basis of section 14(c)(1), Judge Parente's finding that Weinbaum did not properly disclose the September, 1979 transfer in his bankruptcy petition will not be overturned by this court. The fundamental factor in this determination is the assessment of the credibility of the key witnesses in the proceeding, specifically Weinbaum and Firman when giving testimony regarding the transfer of the stock. Judge Parente obviously lent no credence to their testimony, and that finding will neither be challenged nor overturned by this court, *In re Cadarette, supra; Morris Plan Industrial Bank v. Henderson*, 131 F.2d 975 (2d Cir. 1942), as this court after examining the transcript likewise finds their testimony incredible. Accordingly, the discharge denied on the basis of section 14(c)(1) is affirmed.

In conclusion, it is obvious that the findings of fact in the bankruptcy proceeding can in no respects be termed clearly erroneous, Bankruptcy Rule 810; *In re Cadarette, supra; In re Davis*, 404 F.2d 312 (2d Cir. 1968); *Simon v. Agar*, 299 F.2d 853 (2d Cir. 1962); *In re Tabibian*, 289 F.2d 793 (2d Cir. 1961); *In re Steinberg*, 143 F.2d 942 (2d Cir. 1942); *Morris Plan Industrial Bank v. Henderson, supra*, and thus, they will not be upset. Moreover, the bankruptcy judge's application of the law to these facts was proper.

Accordingly, the decision of the bankruptcy court is affirmed.

SO ORDERED.