819 F.2d 550
 16 Collier Bankr.Cas.2d 1330, Bankr. L. Rep. P 71,867
In re Alexander Joseph OLIVIER and Ethelyn Alleman Olivier, Debtors.
John C. THIBODEAUX, Plaintiff-Appellee,
v.
Alexander Joseph OLIVIER and Ethelyn Alleman Olivier,
Defendants-Appellants.
 No. 87-4023
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 June 18, 1987.
Rehearing Denied July 15, 1987.
 
 John L. Olivier, Sunset, La., for defendants-appellants.
 Gerald H. Schiff, Anne E. Watson, Sandoz, Sandoz & Schiff, Opelousas, La., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before CLARK, Chief Judge, and GARWOOD and HILL, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 Appellants Alexander and Ethelyn Olivier ("the Oliviers") appeal the decision of a bankruptcy court, affirmed by the district court, denying them discharge in bankruptcy. The courts below found that, seven years before they filed for bankruptcy, the Oliviers had concealed an asset by transferring title to their house in anticipation of an unfavorable judgment against them in a personal injury suit, and that this concealment continued into the time of bankruptcy and was accomplished with the intent of hindering, defrauding, or delaying a creditor. We affirm.
 
 I.
 
 2
 On June 11, 1978, a car owned by appellant Alexander Olivier and then being driven by his minor son Daniel collided with a farm tractor travelling on a public highway. John Thibodeaux ("Thibodeaux"), appellee in this case, was riding on the tractor. The accident led to the partial amputation of Thibodeaux' left leg. Two days after the accident, appellants transferred title to their home by a cash sale to Aimee Olivier, Alexander Olivier's mother ("Mrs. Olivier"), receiving from her $15,000, which sum the appellants returned to Mrs. Olivier within a few days. Since that time, appellants have continued to live in the same house, maintained the house, and paid for insurance on the property, and have paid no rent.
 
 
 3
 On July 10, 1978, one month after the accident, Thibodeaux initiated a personal injury suit which resulted in a judgment of $103,544.93 against appellant Alexander Olivier on October 3, 1979. See Thibodeaux v. Olivier, 394 So.2d 684 (La.App.3d Cir.), writ ref'd, 397 So.2d 1360 (La.1981), overruled on other grounds, Block v. Reliance Insurance Co., 433 So.2d 1040 (La.1983). The Oliviers' total automotive liability insurance coverage was $5,000. Thibodeaux, 394 So.2d at 686. Appellants filed their Chapter 7 petition on November 26, 1985, and the bankruptcy court denied them discharge in bankruptcy on July 15, 1986. The district court affirmed, and appellants brought this appeal.
 
 II.
 
 4
 Appellants raise two issues, contending, first, that the transfer of the house seven years before bankruptcy and before any judgment was entered against them does not, as a matter of law, fall within the Bankruptcy Code discharge exception relied on by the courts below; and, second, that the courts below erred in concluding that the transfer was accomplished with an intent to "hinder, delay, or defraud a creditor."
 
 
 5
 The provision of the Bankruptcy Code relied on below, 11 U.S.C. Sec. 727(a)(2)(A), provides in pertinent part:
 
 
 6
 "(a) The court shall grant the debtor a discharge, unless--
 
 
 7
 "...
 
 
 8
 "(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed--
 
 
 9
 "(A) property of the debtor, within one year before the date of the filing of the petition...."
 
 
 10
 Cases construing the predecessor to section 727(a)(2)(A) remain applicable because the current provision makes no relevant substantive changes in the language of the predecessor statute.[1]
 
 
 11
 A bankrupt's violation of the provisions of 11 U.S.C. Sec. 727 entirely bars discharge, see First Texas Savings Association, Inc. v. Reed (In re Reed), 700 F.2d 986 (5th Cir.1983), in contrast to 11 U.S.C. Sec. 523, which allows discharge but bars the discharge of particular debts.
 
 A. The issue of intent
 
 12
 Even if a transfer of property occurs within one year before bankruptcy, discharge may nonetheless be granted if the transfer was made without the intent to frustrate creditors. Accordingly, we first address the appellants' second contention, which challenges the findings of the courts below that an intent to frustrate a creditor motivated the transfer of the house. In bankruptcy proceedings, we review findings of fact--including those based on credibility determinations, on physical and documentary evidence, and on inferences from other facts--under the clearly erroneous standard. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1308 (5th Cir.1985) (per curiam) (applying cases interpreting Fed.R.Civ.P. 52(a) in construing Bankr.Rule 8013).
 
 
 13
 Appellants first assert that the district court was clearly wrong in finding that appellants "admitted that the only reason they transferred the property ... was because Mr. Olivier had had a judgment rendered against him in state court." Appellants argue that the record showed the transfer antedated the personal injury suit. We note that the district court did, indeed, include the statement complained of in its ruling and that nothing in the record supports this statement. However, the district court's ruling in any event clearly set out the relevant events in their correct chronology. Even if we assume that the statement complained of is an erroneous finding of fact rather than an insignificant inconsistency, the purported error was harmless. The distinction makes no difference because there was ample evidence supporting the conclusion that the transfer of the house was motivated by the realization of appellants and of Mrs. Olivier that a personal injury suit based on the accident and an adverse judgment were likely.[2] The claim "arose" and Thibodeaux became a creditor for purposes of 11 U.S.C. Sec. 101(9)(A) (defining creditor) when the accident occurred. We decline to hold that purposefully concealing property in anticipation of a known and imminent creditor's lawsuit should necessarily be somehow qualitatively different from concealing property after the judgment on that claim becomes final.
 
 
 14
 Appellants also point to evidence in the record suggesting that the original idea for transferring ownership came not from them but from Mrs. Olivier. We find that this argument, too, points to an immaterial distinction. The courts below considered this evidence and concluded that appellants acted with intent to hinder, delay, or defraud a creditor; regardless of who first originated the idea, only appellants could transfer title to their house.
 
 
 15
 Accordingly, having reviewed the record, we find nothing clearly erroneous in the conclusion of the courts below that appellants, in making the "pretend" transfer of their house and maintaining it in Mrs. Olivier's name despite their continued ownership, acted with the intent to "hinder, delay, or defraud" creditors. We also observe that courts have recognized that those who transfer property with such an intent may be reluctant to disclose their motivation, and that, therefore, courts have held that the intent to frustrate creditors can be inferred from conduct. Discussing the intent issue in the context of the discharge exception, the Second Circuit wrote, "The retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer." EFA Acceptance Corp. v. Cadarette (In re Cadarette), 601 F.2d 648, 651 (2d Cir.1979).[3]
 
 B. Continuing concealment
 
 16
 Appellants' remaining challenge is to the conclusion of the courts below that this transfer concealed an asset and that an act occurring seven years before bankruptcy is within the reach of section 727(a)(2)(A).
 
 
 17
 1. Transfers of title that constitute concealment
 
 
 18
 Concealing property for purposes of section 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership.[4] We examine first whether the transfer of title in this case had the character of a sham transaction.
 
 
 19
 Something of the nature of the distinction between a transfer that divests one of all significant interest in property and a transfer that purports to do so but actually does not may be generally illustrated by two bankruptcy court decisions involving musical instruments. In McCue v. Gailbraith (In re Gailbraith), 17 B.R. 302 (Bankr.M.D.Fla.1982), the bankrupt, a professional musician, claimed he had sold his $10,000 Wurlitzer electric organ to his roommate about three years before bankruptcy. After the "sale," however, the organ remained in place, and the bankrupt's access to and use of the organ, which included playing it in performances, was uninterrupted. Discharge was denied on the ground that the bankrupt had engaged in continuing concealment. Id. at 305.[5]
 
 
 20
 In the contrasting case, Wisconsin Finance Corp. v. Ries (In re Ries), 22 B.R. 343 (Bankr.W.D.Wis.1982), the bankrupts sold to an unnamed third party a piano in which a creditor had a security interest. In the absence of any evidence showing the bankrupts' continued control or use of the piano, the court permitted discharge, id. at 345-46, although the specific debt they owed the holder of the security interest in the piano was held to be nondischargeable under a section 523 exception, id. at 346-48.[6]
 
 
 21
 Construing section 727(a)(2)(A), the Seventh Circuit wrote, "The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property as his own is sufficient to constitute a concealment." Friedell v. Kauffman (In re Kauffman), 675 F.2d 127, 128 (7th Cir.1981) (per curiam). In evaluating the bankrupt's use of a house after the bankrupt had transferred legal title, Kauffman looked to factors including living in the house and paying taxes and insurance on the property. Id. In Kauffman, such "evidence was sufficient to show [the bankrupt] retained a beneficial interest in the property into the statutory period." Id. Similarly, the Oliviers' motivation, their continuing occupancy of the house rent-free, their prompt return of all the "purchase money," and their acts of ownership such as insuring and maintaining the property taken together amply support the conclusion that notwithstanding the purportedly complete transfer they retained a significant beneficial interest in the property and have "continue[d] to use the property as [their] own." We hold the courts below correctly determined that appellants' actions in transferring record title to the house but retaining a significant beneficial interest in it and the benefits of ownership were intended as and did constitute concealment of an asset when the transfer occurred, even though the creditor did not have a final judgment until after the transfer occurred.
 
 2. The continuing concealment doctrine
 
 22
 On its face, section 727(a)(2)(A) addresses only transfers or concealment of property occurring within a year before bankruptcy. Here the purported transfer by appellants occurred more than a year before bankruptcy, but appellants continued the concealment of their secretly retained interest in the property. The courts below relied on the well-settled doctrine that in this character of situation the concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, that such concealment is within the reach of section 727(a)(2)(A).
 
 
 23
 The doctrine of continuing concealment developed and was followed under predecessor provisions of the bankruptcy laws[7] and continues to be followed in more contemporary decisions.[8] Recognizing that we have not heretofore addressed whether the continuing concealment doctrine will be followed within this Circuit in discharge cases involving 11 U.S.C. Sec. 727(a)(2)(A), we now hold that it may be appropriately applied to such cases.[9]
 
 III.
 
 24
 Based on their factual findings, which are not clearly erroneous, we hold that the courts below did not err in determining that appellants' transfer of record title to their home and their continued retention of a secret beneficial interest therein constituted continuing concealment with the "intent to hinder, delay, or defraud a creditor" for purposes of 11 U.S.C. Sec. 727(a)(2)(A), and that discharge was therefore unavailable. Accordingly, we affirm.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 11 U.S.C.A. Sec. 32(c)(4) (effective until it was repealed and replaced by current section 727(a)(2)(A) in 1978 by Pub.L. No. 95-598, 92 Stat. 2609) barred discharge if the debtor
 "at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors...."
 See, e.g., Metropolitan Petroleum Co. v. Frumovitz (In re Frumovitz), 10 B.R. 61, 64 (Bankr.S.D.Fla.1981) (setting out the language of 11 U.S.C.A. Sec. 32(c)(4)).
 
 
 [2]
 Both appellants admitted this in their depositions. Ethelyn Olivier was asked, "Wasn't the accident ... the reason why the house was transferred?" She answered, "It probably was.... We were concerned about having a place to live." She was asked, "[W]ould you have transferred it without the accident?" She answered, "I guess we would have had no reason." Alexander Olivier stated the transfer was "to protect me and part of [Mrs. Olivier's] property [onto which the house extended]" because the lawsuit "may have developed like it did." He was asked, "And there was no other reason for the transfer of the property?" He answered, "No."
 
 
 [3]
 See also Sacklow v. Vecchione (In re Vecchione), 407 F.Supp. 609, 615 (E.D.N.Y.1976):
 "Persons whose intention it is to shield their assets from creditor attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct."
 
 
 [4]
 E.g., Ohio Citizens Trust Co. v. Smith (In re Smith), 11 B.R. 20, 22 (Bankr.N.D.Ohio 1981):
 "Concealment has generally been defined as the transfer of legal title to property to a third party with the retention of a secret interest by the Bankrupt. In effect, this would be creating a trust in the Bankrupt. However, if the transfer is absolute, even if it defrauds the creditors, the transfer cannot bar discharge. ...
 "... The court in Thompson v. Eck, 149 F.2d 631 (2d Cir.1945), held that a bankrupt must retain some legal interest in property before he can be charged with its concealment and preclude his discharge.... The court in the case of In re Vecchione, [407 F.Supp. 609 (E.D.N.Y.1976) ], clarified this position by indicating that even though the bankrupt had transferred legal title ..., the fact that he continued to use and thus derive an equitable benefit from the property constituted continuing concealment. Therefore, in cases where the plaintiff can prove that the debtor retained control or an equitable interest in the property, the courts have appropriately denied discharge under the theory of continuing concealment."
 See also Wisconsin Finance Corp. v. Ries (In re Ries), 22 B.R. 343, 345 (Bankr.W.D.Wis.1982) (quoting this passage).
 
 
 [5]
 Cases to the same effect include In re Cadarette, supra (involving a car the bankrupt "gave" to his fiancee but continued to drive and park at his home); National American Corp. v. Weinbaum (In re Weinbaum), 11 B.R. 128 (E.D.N.Y.1981) (treating bankrupt's alleged stock transfer to his daughter and son-in-law as concealment when the bankrupt retained possession of the stock until shortly before bankruptcy); In re Frumovitz, supra, at 65-66 (involving the bankrupt's transfer of a certificate of deposit to his wife and his setting up of a corporation with all shares owned by her); In re Vecchione, supra (involving bankrupts' transfers of properties to their wives)
 
 
 [6]
 Cases to the same effect include In re Stookey, 60 F.2d 972 (W.D.N.Y.1932) (holding the bankrupt's transfer of mortgages to his mother eighteen months before bankruptcy could not, in the absence of evidence to the contrary, be treated as concealment of assets because the transfer was made in repayment of a loan); Peoples Bank, Inc. v. Herron (In re Herron), 49 B.R. 32 (Bankr.W.D.Ky.1985) (finding a transfer of realty, without any evidence of continuing beneficial use of the property by the bankrupts, was not concealment); In re Fragetti, 24 B.R. 392 (Bankr.S.D.N.Y.1982) (holding the bankrupts' transfer of funds to their daughter and son-in-law for purchase of a home the bankrupts shared with them was not a continuing concealment when the bankrupts had paid rent and the transfer was motivated by the need to provide care for the invalid mother rather than by an intent to frustrate creditors); Ohio Citizens Trust Co. v. Smith (In re Smith), 11 B.R. 20 (Bankr.N.D.Ohio 1981) (bankrupt's sale of a backhoe at auction held not a continuing concealment when evidence showed he did not know the location of the backhoe or the new owner's name, and did not enjoy continued use of the backhoe)
 We mention the Gailbraith and Ries cases discussed in the text, and the cases cited above in this footnote and in note 5, supra, simply as illustrations of the general nature of the distinction between true transfers and those which purport to be complete but actually retain significant interests, and we do not imply approval (or disapproval) of the result reached on the particular facts of each of those cases or of all the language in each opinion.
 
 
 [7]
 E.g., Green v. Toy, 171 F.2d 979, 979 (1st Cir.1949) (ruling that transfers of real estate to a dummy corporation held by the bankrupts' sons more than a year before bankruptcy filing were "a continuing concealment of assets"); In re Groth, 36 F.2d 41, 42 (7th Cir.1929) ("[I]f these acts had as their purpose the concealment of assets ..., which concealment continued during the period when these proceedings in bankruptcy were contemplated, the lapse of a year [between the acts and bankruptcy] would not prevent such concealment from coming within the condemnation of the statute."); In re Ulrich, 18 F.Supp. 919, 920 (S.D.N.Y.1937) (holding that placing ownership of all stock for the bankrupt's corporation in the name of an employee without a real ownership interest five years before bankruptcy prevented discharge; "While the concealment commenced several years before bankruptcy, it continued down to the time of bankruptcy and is within the scope of the statute."), aff'd without opinion, 95 F.2d 1018 (2d Cir.1938)
 
 
 [8]
 E.g., In re Kauffman, supra; In re Vecchione, supra. See also cases cited supra notes 5-6
 
 
 [9]
 Again, we do not purport to speak to the applications of the doctrine in all its possible ramifications under section 727(a)(2)(A) or in significantly different factual contexts