In re Gary M. HOOPER and Wendy
H. Hooper, Debtors.

Robert F. Anderson, Trustee, Plaintiff,

v.

Gary M. Hooper and Wendy
H. Hooper, Defendants.

Bankruptcy No. 01–03981–W.
Adversary No. 01–80186–W.

United States Bankruptcy Court,
D. South Carolina.

Nov. 14, 2001.

not object and thus advance the objecting creditor to an equity position to which it would not otherwise be entitled.

James Perry Craig, Columbia, SC, for debtors.

Lawrence Wilbur Johnson, Jr., Mary G. Slocum, Columbia, SC, for creditors.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Complaint filed by the Trustee to deny the discharge of Gary M. Hooper and Wendy H. Hooper ("Debtors") pursuant to 11 U.S.C. § 727.[1] Specifically, the Trustee brought this adversary action to deny Debtors' discharge on the grounds that they (1) transferred, removed, or concealed property with the intent to defraud creditors (§ 727(a)(2)) and (2) knowingly and fraudulently made false oaths in or in connection with this case (§ 727(a)(4)).

After considering the pleadings, the evidence presented, and counsels' arguments, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052.[2]

## FINDINGS OF FACT

1. On June 26, 1996, Wendy Hooper, then Wendy Hutto, purchased 1.707 acres of real property located at 862 Old Salem Road, Barnwell County, Hilda, South Car-
olina. She titled the property in her name.

2. On February 16, 2000, Ms. Hooper executed a deed to her father, Daniel Hartzog, transferring her interest in the 1.707 acres of property for consideration of $5.00 and love and affection.

3. After Ms. Hooper transferred her interest in the property to Mr. Hartzog, she continued to reside on the property; however, Ms. Hooper and Mr. Hartzog altered the personal property on the land. Some time in June 2000, Ms. Hooper sold her mobile home located on the property to Willis Nolind Homes, Inc. in order to satisfy the indebtedness thereon. On June 14, 2000, Mr. Hartzog purchased a mobile home from Willis Nolind Homes, Inc. and placed this home on the property his daughter transferred to him. Debtors then began to reside in Mr. Hartzog's mobile home.

4. On March 5, 2001, Ms. Hooper negotiated two checks to Mr. Hartzog. Check 3090 was in the amount of $975.00, and Check 3091 was in the amount of $630.51. On Check 3091, Ms. Hooper noted that the instrument was earmarked toward the March house payment and insurance.

5. On April 18, 2001, Debtors filed their Voluntary Petition and Schedules.

6. Debtors' Petition, Schedules and Statement of Financial Affairs contained several deficiencies, including the following:

 a. The Petition requires Debtors to list all names, including married, maiden, and trade names, used by Debtors within the last six years. In the six year period prior to bankruptcy, Ms. Hooper was also known

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclu-
sions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

as Wendy Hutto; however, Debtors did not disclose this name on the Petition.

b. Debtors' original Schedule D does not indicate secured automobile claims held by Ford Credit and GMAC; however, Debtors subsequently amended Schedule D to reflect these claims.

c. Debtors' Schedule F does not reflect debts owed to Mr. Hartzog; however, Debtors owe Mr. Hartzog approximately $25,000 for loans he has given to Debtors.

d. Debtors' Schedule I indicates that Debtors receive no child support. As part of the formula to calculate income, the Schedule asks debtors to include "Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above." Despite this language, Debtors failed to include the amount of child support Ms. Hooper receives from her former husband.

e. Debtors' Statement of Financial Affairs, Question 1, is not answered, thereby indicating that Debtors had no income from employment or operation of a business in 1999, 2000, or 2001 in the months prior to Debtors filing their bankruptcy petition. In fact, Debtors' 1999 joint tax return indicates gross income of $23,552, and their 2000 joint tax return indicates gross income of $22,275. In addition, Ms. Hooper acknowledged that she earned income in 2001 prior to Debtors filing bankruptcy.

f. Debtors' Statement of Financial Affairs, Question 2, indicates that Debtors did not receive income other than from employment or operation of a business; however, as noted previously, Ms. Hooper receives child support from her former husband. Debtors failed to include this fact in their response to Question 2.

g. Debtors' Statement of Financial Affairs, Question 3b indicates that Debtors made no payments to insiders within the

year preceding the commencement of their bankruptcy; however, on March 5, 2001, approximately six weeks prior to Debtors filing bankruptcy, Ms. Hooper negotiated two checks to Mr. Hartzog in the amount of $1,605.51.

h. Debtors' Statement of Financial Affairs, Question 5, indicates that none of Debtors' property was repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure, or returned to the seller within one year immediately preceding the commencement of Debtors' bankruptcy. In June 2000, Debtors voluntarily returned two of their vehicles to creditors because Debtors could not afford to make the payments.

i. Debtors' Statement of Financial Affairs, Question 9, indicates that Debtors made no payments related to debt counseling or bankruptcy; however, Debtors paid $1,000.00 to James P. Craig to represent them in bankruptcy proceedings.

j. Debtors Statement of Financial Affairs, Question 10, indicates that Debtors transferred no property, other than in the ordinary course of business, within the year prior to Debtors filing bankruptcy. Ms. Hooper, however, in June 2000, transferred a mobile home she owned to Willis Nolind Homes, Inc.

## CONCLUSIONS OF LAW

To frame its discussion of the issues, the Court initially notes that discharge of a debtor's debts is favored. *See Castles v. Bailey (In re Bailey)*, C/A No. 99–05056–W, Adv. No. 99–80333–W, at 4–5, 2000 WL 33710881 (Bankr.D.S.C. Mar. 13, 2000). However, certain provisions of § 727 prohibit discharge for those debtors who "play fast and loose with their assets or with the reality of their affairs." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d

244, 249 (4th Cir.1994) (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987)). To prove an objection to discharge under § 727, a plaintiff must prove its case by a preponderance of the evidence. *See Farouki*, 14 F.3d at 249; *Anderson v. Walker (In re Walker)*, C/A No. 99–09899–W, Adv. No. 00–80086, at 5 (Bankr.D.S.C. Jan. 5, 2001). Once a plaintiff makes a *prima facie* case, the burden of proof shifts to the debtor to offer credible evidence to satisfactorily explain his or her conduct; however, the ultimate burden remains on the plaintiff objecting to discharge. *See Farouki*, 14 F.3d at 249; *Walker* at 5.

## I. Section 727(a)(2): Concealment of Property Interest

■ The Trustee first argues that Debtors' discharge should be denied because Debtors concealed a property interest. A debtor's discharge can be denied if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ... (A) property of the debtor, within one year before the date of the filing of the petition. § 727(a)(2).

Essentially, the elements of a § 727(a)(2) action are as follows: (1) the act under scrutiny occurred during the one year period prior to bankruptcy; (2) the act was done with the actual intent to hinder, delay, or defraud creditors or the trustee; (3) the debtor or his duly authorized agent was the actor; and (4) the act in question consisted of either transferring, removing, destroying, or concealing a debtor's property. *See Kaler v. Craig (In re Craig)*, 195 B.R. 443, 449 (Bankr.D.N.D.1996); *Adams v. Filter (In re Filter)*, C/A No. 99–04462–W; Adv. No. 99–80370–W, at 8, 2000 WL 33710873 (Bankr.D.S.C. Jun. 15, 2000).

The Trustee alleges Debtors concealed Ms. Hooper's interest in 1.707 acres of real property by transferring the tract of land to Mr. Hartzog while she actually retained an interest in this property, evidenced by her continued use and possession of it. In addition, the Trustee alleges that this concealment was done with the intent to hinder, delay, or defraud Debtors' creditors or the Trustee.[3]

■ Initially, while it appears that Ms. Hooper transferred the real property approximately fourteen months prior to Debtors' petition for bankruptcy, beyond the period specified in § 727(a)(2), the Trustee argues that § 727(a)(2) applies due to the continuous concealment doctrine. Essentially, this doctrine provides that, when dealing with a concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy, this concealment is within the reach of § 727(a)(2) regardless of when the transfer and concealment initially took place. *See Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 555 (5th Cir.1987). In other words, the doctrine permits courts to find a concealment during the year prior to bankruptcy even if the initial act of transfer and concealment took place before the one year period as long as the debtor allowed the property to remain concealed into the critical year. *See Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993)

---

**3.** Assuming for the sake of argument that Debtors could declare this property as exempt from the bankruptcy estate pursuant to § 522(d)(1), the Court recognizes the recent Fourth Circuit decision that holds that transfers of potentially exempt property are amenable to avoidance and recovery actions by bankruptcy trustees. *See Tavenner v. Smoot*, 257 F.3d 401, 407 (4th Cir.2001).

(citing *Olivier*); *see also Depositors Econ. Prot. Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 259 (1st Cir. BAP 1999) (defining the doctrine as applicable "when a debtor, prior to the year before bankruptcy, has transferred property but has secretly held something back, and has concealed that secret interest in the months immediately preceding bankruptcy"). Although this doctrine allows some flexibility with the timing requirements of § 727(a)(2), the essential focus remains the same: plaintiffs must prove the requisite conduct as well as the requisite intent actually occurred or continued within the year preceding bankruptcy. *See Rosen*, 996 F.2d at 1531, 1533; *Hayes*, 229 B.R. at 260.

To determine whether Debtors concealed a property interest, the Court must first decide whether Debtors retained an undisclosed interest in the transferred property. *See Rosen* 996 F.2d at 1532 ("In a situation involving a transfer of title coupled with retention of the benefits of ownership, there may, indeed be a concealment of property. Where this is the case, however, the concealment is present not because the retention of the benefits of ownership conceals the fact that the debtor no longer has legal title, but rather because the transfer of title represents to the world that the debtor has transferred away all his interest in the property while in reality he has retained some secret interest—a secret interest of which retention of the benefits of ownership may be evidence."). Courts have found a secret interest in a variety of situations, but the typical scenario is where, after transferring the property, the debtor continues to live on the property and makes mortgage, tax, and or insurance payments.[4]

■ Upon an examination of the facts, the Court concludes there is insufficient evidence to prove that Ms. Hooper retained a secret interest in the property. Although she continued to live on the property, there is not the same degree of additional indicators of beneficial ownership which have appeared in other cases. For example, with the exception of Debtors submitting Check 3091 to Mr. Hartzog, which Debtors' testimony characterized as a rent payment, there is no evidence that Debtors actually retained an interest in the property as may be shown by their consistent or routine making of payments on the land or the mobile home or by paying for taxes and insurance on the real property. Moreover, merely continuing to live on the property is insufficient to prove a secret interest. *See Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 174 (Bankr. N.D.Ill.1997); *Patton v. Hooper (In re*

---

4. See *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683–84 (6th Cir.2000) (finding a beneficial interest where the debtor lived rent-free on property he purchased in his parents' names yet the debtor made the mortgage payments); *Olivier*, 819 F.2d at 554 (finding a significant beneficial interest retained where the debtor transferor continued to live on the property, insured and maintained it); *Friedell v. Kauffman (In the Matter of Kauffman)*, 675 F.2d 127, 128 (7th Cir.1981) (finding a concealment of interest where the debtor continued to use the property as his own, evidenced by his living on the property, using the property as collateral for loans, and making mortgage, tax, and insurance payments); *Hayes*, 229 B.R. at 262 (affirming bankruptcy court's finding of secret interest evidenced by the debtors using the "transferred" property as security to their attorney for their attorney's fees); *Penner v. Penner (In re Penner)*, 107 B.R. 171, 175 (Bankr.N.D.Ind.1989) (finding a sufficient beneficial interest retained in transferred dairy where the debtor continued to work and manage the dairy as he had previously and also because income from the dairy was used to pay the debtor's personal expenses); but see *Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 174 (Bankr.N.D.Ill. 1997) (noting that merely residing in the transferred residence without accompanying indicia of ownership did not constitute concealment) (citing *In re McFarland*, 170 B.R. 613, 629–30 (Bankr.S.D.Ohio 1994)).

*Hooper)*, 39 B.R. 324, 327 (Bankr.N.D.Ohio 1984) ("The Court holds that the bare proof of debtors continuing to live on the property that they transferred . . . without more, is insufficient to constitute a 'continuing concealment' to bring the transfer within the one year period specified in § 727(a)(2)(A)."). To meet the burden of proving a secret interest by a preponderance of the evidence, the Trustee must show the Court something more than Debtors continuing to live on the real property. Two checks written to the owner of the property on the same day in a fourteen month span is not sufficient to sustain the burden. Accordingly, the Court finds that Debtors did not have a secret interest in the real property.

 Although it could conclude its analysis of this issue at this point, the Court will also address the intent aspect of this cause of action. Again, the Trustee must show that Debtors' intent to conceal an interest in property carried over into the year prior to bankruptcy. *See Rosen*, 996 F.2d at 1533. Intent can be proven by direct evidence or by circumstantial evidence drawn from a debtor's course of conduct. *See Craig*, 195 B.R. at 450. Other courts that have inferred intent have typically emphasized the existence of some

substantial debt hovering over the debtors that they are clearly trying to avoid.[5] In addition to the existence or imminence of substantial debt, the transfer to conceal a debtor's interest is often laden with badges of fraud,[6] including lack of consideration, an insider or close relationship between the debtor and the transferee, the debtor's continued possession, benefit, or use of the property, the proximity of the transfer to the debtor's filing bankruptcy, and the concealment of the transfer. *See id.*

 Unlike the cited cases, Debtors' schedules do not indicate a specific, substantial debt that they egregiously attempted to avoid. While the parties stipulated that Debtors had financial problems before filing bankruptcy and at or about the time of the transfer of real property, Debtors explained the sale of the real property and mobile home as a means of addressing their debts. The evidence did not indicate the imminence of some specific claim or judgment that might motivate Debtors to hide their property.

The much closer case is the badges of fraud analysis. The Court agrees with the Trustee that, from this standpoint, this transaction is suspect. Insiders, father and daughter, transferred land for inadequate consideration, and, during her Rule

---

**5.** See *Keeney*, 227 F.3d at 684 (inferring intent stemming from a personal judgment against the debtor); *Korte v. Internal Revenue Service (In re Korte)*, 262 B.R. 464, 473 (8th Cir.BAP2001) (noting claims by tax authorities in the amount of approximately $90,000); *Hayes*, 229 B.R. at 255 (noting a judgment against the debtors in the amount of $2,029,690); *Craig*, 195 B.R. at 450 (noting extremely large claims against the debtor by his former spouse and the Internal Revenue Service and balancing these against the debtor's interest in supporting a new family).

**6.** See *Mussa*, 215 B.R. at 173 (finding several badges of fraud where property transfer was to the debtors' son, the debtors continued to reside in one of the transferred properties,

and the transfer occurred after the debtors incurred substantial debts); *Hayes*, 229 B.R. at 262 (upholding lower court's finding of intent where the transaction included a transfer from the debtors to a trust managed by their son, yet the debtors continued to live in the transferred property; additionally, in their schedules, the debtors claimed no interest in the transferred property); *Craig*, 195 B.R. at 450 (finding several badges where the debtor titled nearly all assets, including real property, in his spouse's name only, yet the debtor lived on, maintained, and paid for the property; additionally, in his schedules, the debtor disclosed no interest in the real property).

2004 Examination, Ms. Hooper alluded to her family's financial difficulties during the time of the transfer and that she was faced with selling the land because it was all she owned. As noted previously, Debtors continue to the live on the property after it was transferred to her father. However, the Court believes a critical aspect regarding intent missing from this case is concealment. The question in the Schedules and Statement of Financial Affairs does not require Debtors to disclose the transfer. Furthermore, when asked about the transfer during her Rule 2004 Examination, Ms. Hooper was forthright about the transaction and admitted it occurred. Accordingly, although several of the badges of fraud are present in this case, the Court concludes that the Trustee did not meet his burden of proving, by a preponderance of the evidence, Debtors' intent to conceal a secret property interest that carried over into the year prior to bankruptcy.[7]

## II. Section 727(a)(4): False Oath or Account

In his Complaint, the Trustee also argues that the Court should deny Debtors' discharge on the grounds that they made a false oath or account. Specifically, the Trustee alleges eleven instances where Debtors failed to answer questions accurately or completely in their Schedules and in their Statement of Financial Affairs.

To deny a debtor's discharge under § 727(a)(4), courts must find, by a preponderance of the evidence, that a debtor made a statement under oath that he or she knew to be false and that the debtor made the statement willfully with the intent to defraud. *See Williamson v.*

Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir.1987). In addition, the false oath must relate to a material matter. *See id.*

In its Findings of Fact, the Court concluded that there were ten instances where Debtors omitted information or failed to provide accurate information in their Schedules and Statement of Financial Affairs.[8] Without repeating the Findings of Fact in their entirety, the Court notes the following examples of inaccuracies in Debtors' bankruptcy documents: Debtors failing to disclose Ms. Hooper's previous married name, Debtors failing to disclose their income over a three year span, and Debtors failing to disclose payments made to Mr. Hartzog approximately one month prior to filing bankruptcy. Accordingly, Debtors provided false information in their Schedules and Statement of Financial Affairs, and their declarations in these documents constitute oaths. *See Kaler v. McLaren (In re McLaren)*, 236 B.R. 882, 894 (Bankr.D.N.D.1999) ("For purposes of [§ 727(a)(4)(A) ], a 'false oath' sufficient to merit a denial of discharge includes a misrepresentation or an omission in the debtor's bankruptcy Schedules or Statement of Financial Affairs."); *Huntington Center Partners, Ltd. v. Dupree (In the Matter of Dupree)*, 197 B.R. 928, 937 (Bankr. N.D.Ala.1996) ("For purposes of section 727(a)(4)(A), 'false oaths' include false statements or omissions in a debtor's schedules, false statements made by a debtor during the section 341 meeting of creditors, and false statements at the debtor's deposition."); *Peoples Bank of Charles Town v. Colburn (In re Colburn)*, 145 B.R.

---

7. This determination does not preclude or affect the Trustee's pending action to recover the real property pursuant to § 544.

8. The Trustee alleged eleven instances of false oaths; however, the Court disagrees with the Trustee with respect to not including Ms.

Hooper's interest in the real property in her Schedules. As noted previously, the Court found she has no secret interest in the real property; consequently, she omitted nothing falsely by not including it in her Schedules.

851, 857 (Bankr.E.D.Va.1992) ("When a debtor signs a schedule and a statement of affairs, he does so under penalty of perjury, and such 'written declarations have the force and effect of oaths.' ").

 The next prong in the Court's analysis is whether Debtors made their false statements willfully with the intent to defraud. Intent can be shown by direct evidence, or courts can deduce intent by circumstantial evidence or inferences drawn from a course of conduct. *See Williamson*, 828 F.2d at 252. In addition, the fraudulent intent element is satisfied if a debtor has exhibited a reckless indifference to the truth,[9] and courts have found this reckless indifference where the number of errors in the debtor's oaths produces a cumulative effect that indicates a pattern of cavalier disregard for the truth. *See Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 484 (E.D.Va.1997). In this case, the Court finds that Debtors displayed a reckless disregard for the truth, and the Court reaches this conclusion in part because of the numerous inaccuracies in Debtors' Schedules and Statement of Financial Affairs. As the Findings of Fact indicate, Debtors made ten mistakes in their bankruptcy documents. The sheer number of errors convinces the Court that

the omissions do not stem from mistake or oversight.

 The final element the Court must examine is whether the false oaths relate to a material matter. A statement relates to a material matter when it bears a relationship to the existence and disposition of a debtor's property. *See Williamson*, 828 F.2d at 252. Clearly, the errors and omissions regarding debts owed, property transferred, and payments made to insiders relate to Debtors' property. The Court agrees that Debtors failure to list Ms. Hooper's maiden name, the name in which she maintained and transferred title to the real property, is material and affects the Trustee's ability to discover transfers that may be subject to a Statute of Elizabeth action under state law pursuant to § 544. Additionally, payments made to Mr. Hartzog may be subject to preference or other claims. Therefore, the Court rules that Debtors' omissions relate to a material matter.

 Additionally, the Court responds to Debtors' defense that these glaring omissions from their bankruptcy documents stem from honest mistakes, or, as Ms. Hooper testified, her failing to review the questions contained in the Schedules with a fine-tooth comb. In addition, Debt-

**9.** See *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 575 (Bankr.N.D.Ill.2000) (finding fraudulent intent by a pattern of concealment and errors, evidenced by the debtor's failing to disclose his interests in automobiles, the transfers of automobiles, and income earned from rental property and gambling proceeds); *Krudy v. Scott (In re Scott)*, 227 B.R. 834, 842 (Bankr.S.D.Ind.1998) (denying a debtor's discharge because of the cumulative effective of the debtor's omissions and misstatements where, among other things, the debtor failed to disclose his employment with one entity, his interest in one business, the existence of checking accounts and stock options, and where the debtor misstated his income); *Dupree*, 197 B.R. at 938 (finding reckless disre-

gard for the truth where the debtor omitted six facts from her schedules, including a transaction that liquidated her business two months prior to filing bankruptcy as well as the existence of loans and a bank account); *Colburn*, 145 B.R. at 858 (finding reckless disregard for the truth where the debtor made seven false statements under oath); *Nat'l Post Office Mail Handlers, Int'l Union of N. Am. v. Johnson (In re Johnson)*, 139 B.R. 163, 170 (Bankr.E.D.Va.1992) (denying a debtor's discharge because of the cumulative effect of eight omissions from his schedules, including misstating his income, not disclosing his interest in a business entity, failing to disclose his residence, and failing to disclose records of his business affairs).

ors urge the Court not to penalize debtors because their errors and omissions did not result in a benefit to Debtors or a detriment to creditors. The Court rejects these specious defenses that would require the Court to relax standards for persons who are unfamiliar with these documents despite having assistance of counsel. Bankruptcy is a give-and-take process, and, in order for Debtors to receive the benefits and protections of the Bankruptcy Code, they must fulfill their role of complete disclosure to their creditors and the Trustee. *See Tillery v. Hughes (In the Matter of Hughes)*, 184 B.R. 902, 909 (Bankr. E.D.La.1995) ("The success of the bankruptcy system hinges upon a debtor's veracity and willingness to make full disclosure."). Moreover, "[t]he bankruptcy schedules and statements of affairs are carefully designed to elicit certain information necessary to the proper administration and adjudication of the case. To allow the Debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system." *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 715 (Bankr.D.S.C. 1995); *see also Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987) ("The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction."). Accordingly, Debtors have a duty to respond to the questions asked of them thoroughly and thoughtfully. Submitting schedules in an incomplete and slapdash manner does not suffice as fulfillment of this role. *Cf. In re Boland*, C/A No. 01–03911, at 2 (Bankr.D.S.C. May 24, 2001) (recognizing the problem with inaccurate and misleading information in petitions, schedules and statement of affairs and warning "that the Court will not be placed in the position of ferreting the truth

from inaccurate and misleading information supplied by debtors and their counsel").

Because Debtors failed to meet this obligation, the Court denies them their discharge pursuant to § 727(a)(4)(A).

IT IS THEREFORE ORDERED that Debtors are denied their discharge pursuant to § 727(a)(4)(A).

**AND IT IS SO ORDERED.**