**Ralph A. OLDENDORF, et al.**

v.

**C.J. BUCKMAN, Jr.**

**Civ. A. No. 94–1855.**

United States District Court, E.D. Louisiana.

Oct. 4, 1994.

Michael J. Moran, Metairie, LA, for appellants.

William Gardere Cherbonnier, Harvey, LA, for appellee.

## ORDER AND REASONS

McNAMARA, District Judge.

Before the court is the Appeal of Ralph A. Oldendorf, Jr. and Peggy Pflug Oldendorf ("Debtors") from the Judgment issued by the United States Bankruptcy Court in Bankruptcy No. 92–116141–JAB, Adversary No. 92–1288–JAB. Appellee, C.J. Buckman, filed a late brief. The matter is before the court on briefs, without oral argument.

On appeal, this court may affirm, modify or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Bankr.Rule 8013. Now, having considered the briefs of counsel, the records below and the applicable law, this court finds that the Bankruptcy Court's Judgment should be affirmed as modified.

### I. Background

#### A. Pre–Bankruptcy Proceedings

In August 1990, Buckman filed a contract suit against the Oldendorfs in Jefferson Parish. Mr. William Cherbonnier, Jr., counsel for Buckman, had learned that the Oldendorfs would be able to respond to a money judgment because Peggy Oldendorf had inherited some property from her mother's succession that had been closed in 1985.

However, during the pendency of this state court action, counsel for the Oldendorfs advised counsel for Buckman that the Oldendorfs were considering filing for bankruptcy. Buckman actually learned of the Oldendorfs' Chapter 13 proceedings purely by chance on or about December 27, 1991 when his attorney appeared in the bankruptcy court on another matter.

## B. Chapter 13 Proceedings

In 1991, Debtors filed for Chapter 13 protection and filed schedules which: (1) erroneously listed C.J. Buckman, Jr. (the Plaintiff in Adversary No. 92–1288–JAB) as "Brickman" (with no address given) and itemized his claims as "fixed and liquidated" in the amount of $70,000;[1] and (2) failed to list a pending lawsuit filed by Buckman against the Debtors in state court. First National Bank of Jefferson (FNJ) opposed confirmation of the plan in the Chapter 13 proceedings[2] because the Debtors failed to include certain properties contained in a Judgment of Possession issued by a state court in the Succession of Rose Mary Anding Pflug ("Succession").[3] Debtor Peggy Oldendorf was one of four heirs of the deceased and was put in possession of one-fourth of her mother's property "subject to the usufruct of their father."[4]

On January 7, 1992, Debtors filed amended schedules in the Chapter 13 proceedings which: (1) included "Calvin Buckman Jr." on the mailing matrix; and (2) listed an undivided one-eighth interest in the Succession as an "equitable or future interest." Ultimately, the Chapter 13 proceedings were dismissed on February 11, 1992, for failure to file a feasible plan.

## C. Chapter 11 Proceedings

On April 14, 1992, Debtors then filed for Chapter 11 relief (No. 92–11641–JAB) with schedules (signed under penalty for perjury) which: (1) again failed to list Buckman's pending state lawsuit against Debtors; and (2) included as an "equitable or future interest" the

Undivided one-eight (sic) interest in Succession of Rose Mary Anding Pflug inherited in proceedings No. 306–71 of the docket of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Note, debtor's wife is owner of property and property is subject to lifetime usufruct in favor of wife's father.

This interest was assigned a value of $13,263.00.

On May 15, 1992, Debtors moved to dismiss their Chapter 11 case because the automatic stay with regard to their residence was lifted,[5] the residence was sold at a sheriff's sale, and the Debtors were then purportedly able to make arrangements to pay their remaining creditors without Title 11 relief.[6] However, Buckman opposed this motion to dismiss and moved that the matter be converted to a Chapter 7 proceeding. (See Buckman Trial Exhibit P, Objection to Debtors' Motion to Dismiss and Motion to Convert).

The creditors' meeting in the Chapter 11 case was originally scheduled on May 15, 1992, but Debtors apparently did not attend this meeting because they had filed their motion to dismiss. The creditors' meeting was rescheduled on **May 28, 1992,** with Diana Rachal of the United States Trustee's Office presiding. Ms. Rachal's notes from this

1. See Buckman Trial Exhibit E, Original Schedule filed in Chapter 13 Proceedings. This schedule, signed by both Debtors, contains a Declaration under penalty of perjury that the schedule is true and correct.

2. See Buckman Trial Exhibit H, FNJ's Opposition to confirmation of plan.

3. See Buckman Trial Exhibit C, Judgment of Possession. This Judgment of Possession was signed on January 29, 1985 and it indicates that Calvin Anding Pflug (father of Debtor Peggy Oldendorf) was recognized as owner in indivision of one-half of the assets belonging to the community and granted him a usufruct over all former community property. The Judgment itemizes several pieces of real estate, household effects, an automobile, and stock, as being community property.

4. The record indicates that Debtors failed to show that Mr. Pflug obtained a usufruct for life over the property inherited by his children rather than a usufruct until remarriage. However, the court notes in Buckman Trial Exhibit R (Debtors' Petition to Amend Bankruptcy Petition) that Debtors acknowledge in Paragraph "c" that Peggy Oldendorf's interest in the estate is not subject to a usufruct.

5. On April 14, 1992, Judge Kingsmill lifted the stay on Debtors' property upon motion of FNJ. The court found no equity in the property and that it was not necessary for reorganization. The court further found that the Debtors had filed their Chapter 11 case in bad faith. (See Buckman Trial Exhibit K).

6. See Buckman Trial Exhibit L, Debtors' Motion to Dismiss.

meeting reflect that "Debtor(s) required to amend to list assets inherited by mother within 2 week (sic), amend schedules to list suit filed by Buckman, provide proof of ins. by 5/29/92 at noon." (*See* Buckman Trial Exhibit N).

On June 25, 1992, Debtors filed their amended schedules which: (1) listed the Buckman lawsuit; and (2) included as "other contingent and unliquidated claims of every nature" the

> Undivided one-eight (sic) interest in Succession of Rose Anding Pflug inherited in proceedings No. 306–171 of the docket of 24th JDC . . .

This claim is valued at $13,263.00. (*See* Buckman Trial Exhibit Q).

However, on **May 30, 1992,** two days after the creditors' meeting, Peggy Oldendorf executed a power of attorney authorizing her father, Calvin Pflug, to act as her attorney to execute an Act of Sale "conveying with full warranty [her] undivided interest" in property inherited from her mother and located in the Briarwood Subdivision of Jefferson Parish. (*See* Buckman Trial Exhibit O, Power of Attorney). This power of attorney was not mentioned on the amended schedules filed on June 25, 1992.

On **July 29, 1992,** approximately two months after the creditors' meeting, this property was actually sold for $55,000.00 without the bankruptcy court's permission or knowledge. (*See* Buckman Trial Exhibit T, Act of Sale). Ralph Oldendorf testified at the Trial of the Adversary Proceeding that Calvin Pflug gave Peggy Oldendorf a check for her portion of the proceeds, *but he was not sure when this occurred.* (*See* Trial Transcript, pp. 53–53). Mr. Oldendorf further testified that Debtors told Mr. Pflug that they could not keep the check because they were in bankruptcy and asked him to turn the check over to the Trustee. Debtors themselves did not give the check to the Trustee. Neither Peggy Oldendorf nor her father, Calvin Pflug, testified at the adversary proceeding.

On August 21, 1992, Judge Kingsmill converted the Debtors' voluntary Chapter 11 proceedings to Chapter 7 proceedings upon Buckman's motion. (*See* Rec. 92–11641, Doc. No. 33).

### D. Chapter 7 Proceedings

When the case was converted to a Chapter 7 proceeding (on August 21, 1992), the bankruptcy court ordered the appointment of a trustee and ordered the Debtors to file a financial statement showing their operations during the Chapter 11 proceedings. The financial sheet was to include a balance sheet and profit and loss statement together with a list of assets. (*See* Rec. 92–11641–JAB, Doc. No. 33).

The Debtors filed a statement which did not disclose the $55,000 sale of real property and the Debtors' accounts receivable were shown as zero. (*See* Rec. 92–11641–JAB, Doc. No. 37). Peggy Oldendorf's inheritance for the months April 1992 through August 1992 is listed under "Other Assets" and valued at $13,263.00. (*Id.*)

On October 19, 1992, a meeting of creditors was held before Cynthia Traina, the Interim Trustee. Her notes state: "Debtor's Succession interest in Rose Marie Anding Pflug—to be sold . . . Investigate stock ownership in corporations." (*See* Rec. 92–11641–JAB, Doc. No. 39). Again, no reference is made to the power of attorney, the $55,000 sale or the $5,474,77 check.

On December 9, 1992, Trustee Traina filed a motion to sell three specific real properties from the Debtors' estate to Calvin Pflug for $12,500. (*See* Rec. 92–11641–JAB, Doc. No. 40). Buckman opposed this sale, but Judge Brown approved it. (*See* Rec. 92–11641–JAB, Doc. No. 51).

### E. Adversary Proceeding

On December 18, 1992, Buckman filed this Adversary Proceeding (No. 92–1288–JAB) objecting to the Debtors' discharge under 11 U.S.C. §§ 727(a)(2), 727(a)(4) and 727(a)(6). (*See* Rec. Adversary No. 92–1288–JAB, Doc. No. 1).

The Trial of the Adversary Proceeding was held on July 7, 1993 before United States Bankruptcy Judge Jerry A. Brown. (*See* Rec.Adversary No. 92–1288–JAB, Doc. No. 26, Transcript of the Adversary Proceeding).

At this Trial, Attorney Cherbonnier testified for Buckman and Ralph Oldendorf testified for the Debtors. No other witnesses were called. Counsel for the Debtors attempted to hold the proceeding open to bring in Trustee Traina, but the Bankruptcy Court refused stating:

No, I'm not going to let you do that for two reasons. One, I don't think that the duty that a debtor owes to fully disclose all of its assets to the bankruptcy court, that cannot be transferred to the trustee or to the U.S. Trustee. And simply showing that you delivered—You can't just deliver a bunch of documents to them and say this all my assets. You have a higher duty than that. And you don't discharge that obligation by bringing in Ms. Traina to say that yes, you delivered to her a copy of the judgment of possession.

So, her testimony won't help me any.

(*See* Rec. Adversary No. 92–1288–JAB, Doc. No. 26, Transcript of Adversary Hearing, pp. 61–62).

Upon completion of the testimony and evidence in the Adversary Proceeding, the Bankruptcy Court stated:

[L]et me tell you what's worrying me about this case. I'm very much concerned about the fact that there were some pretty valuable assets listed in that descriptive list and in a Judgment of Possession that there's never been any accounting for to anybody in the bankruptcy, in any of these bankruptcy estates. And I don't think it's sufficient to just show that well, they got a check for $5,000 and we don't know what the hell it represents. Nor is it sufficient to show that well, they came in here and thought they were selling all that they inherited when they clearly were not.

There's some unaccounted for assets here. Now, whether that's sufficient enough to rise to fraud or constructive fraud or filing of false oaths is another legal question. But I have to tell you the court is concerned about that one-fourth interest in the stock. I don't see any way that's been accounted for. There was an automobile. Without specifically going through it I can't tell you, but there's some other assets ... in the descriptive list and the Judg-

ment of Possession that are not accounted for in my mind by the $5,000 check or by the sale we had in this court in January. Now, that's what troubling me about this case.

(*Id.* at 60–61).

Debtors submitted a post-trial memorandum to address the court's concern whether Debtors had adequately disclosed the assets inherited by Peggy Pflug Oldendorf through her mother's succession since the assets were described as an undivided interest in the succession, but the succession was closed in 1985. Debtors argued that Buckman had failed to present any evidence at trial to prove that other assets (including household effects, bank accounts, an automobile, stock, and personal property) existed when the Debtors filed their first bankruptcy petition. Debtors also argued that, in fact, none of these assets existed and attached a certified copy of the act of sale of the stock and the Affidavit of Ralph and Peggy Oldendorf.

On November 4, 1993, Bankruptcy Court entered its Judgment and accompanying Memorandum Opinion denying the discharge of Debtors under §§ 727(a)(2)(A) and 727(a)(4). The Bankruptcy Court found it was unnecessary to consider the objection to discharge under § 727(a)(6). (*See* Rec.Adversary No. 92–1288–JAB, Docs. Nos. 18 & 19).

Debtors filed a Motion for a New Trial arguing that:

The debtors have no quarrel with the legal conclusions of the [Bankruptcy] Court in its opinion.

The factual conclusions, on the other hand, we submit, are particularly harsh when viewed in the light in which they occurred.

(*See* Rec. Adversary No. 92–1288–JAB, Doc. No. 27, Debtors' Memorandum. p. 2).

Debtors were represented by the same counsel through all of their bankruptcy proceedings and the related adversary proceeding. Following the filing of the Debtors' Motion for New Trial, but before the hearing of this motion, Debtors' were represented by different counsel.

The Debtors' Motion for New Trial was heard on January 27, 1994. (*Id.*, Doc. No. 32, Transcript of hearing on Motion for New Trial). During this proceeding, Debtors' new counsel argued that:

[I] respectfully submit that the court's memorandum opinion was based upon inferences that were skewed by some miscues of the counsel for Mr. and Mrs. Oldendorf. Of the various counsel, I should say.

. . . . .

(*Id.*, Doc. No. 32, Transcript of hearing on Motion for New Trial, p. 3).

The court responded:

[I] have tried a lot of cases and I never tried a case that I lost that I didn't think I made a hell of a lot of miscues. And on the other hand, I never tried one that I won that I didn't think I was brilliant. But you simply . . . don't get a new trial on the basis that you didn't try the case the way you would have tried it if you had another bite at it. . . . And I should add for the record, I don't think [Debtors counsel] did that bad a job of trying the case. I thought she put forth a pretty good case . . . and she put on a lot of evidence. Unfortunately, she either did not have or did not put on evidence to answer a lot of the questions that the court had on its mind. . . . There was a pattern of conduct in this case.

(*Id.* at 8). The Bankruptcy ultimately denied the Debtors' Motion for a New Trial.

This Appeal resulted with Appellants raising the following issues (which were basically the same issues argued by Debtors' new counsel at the hearing on the Motion for New Trial):

1. The trial court erred in concluding an inference of requisite intent to deceive based upon the pattern of omissions and inconsistencies evident here considering no showing of heinous result or intent for such a result.

2. The trial court erred in concluding that the failure to explain a pattern of inconsistencies found by the court was the responsibility of the debtors when most, if not all, of the errors and inconsistencies were

clearly due to the failure of the debtors' counsel to properly address these issues. (*See* Appellants' Brief, p. 5).

## II. Legal Analysis

Pertinent parts of 11 U.S.C. § 727(a)(2) and (4) state:

**§ 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of filing of the petition;

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

■ The elements ·of an objection to discharge must be proved by a preponderance of the evidence. *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992); *In re Swift,* 3 F.3d 929 (5th Cir.1993). As discussed below, Buckman sufficiently proved his objections to Debtors' discharge under both §§ 727(a)(2) and 727(a)(4). However, either § 727(a)(2) or § 727(a)(4) would suffice to deny discharge. *Id.* at 177; *In re Reed,* 700 F.2d 986, 989 (5th Cir.1983).

*A. The bankruptcy court properly held that Debtors should be denied discharge under 11 U.S.C. § 727(a)(4)(A).*

■ The purpose of § 727(a)(4)(A) is to insure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examinations or investigations to determine whether the information provided is true. *In re Gonzalez,* 92 B.R. 960, 962 (Bankr.S.D.Fla. 1988). Furthermore, even if assets are

worthless or invaluable to creditors, the debtor has an obligation of full disclosure. The reason behind this policy of good faith disclosure is essential to the successful administration of the bankruptcy code. *Id.*

To prove an objection to discharge under § 727(a)(4), the creditor must prove:

(1) the debtor made a statement under oath;

(2) the statement was false;

(3) the debtor knew the statement was false;

(4) the debtor made the statement with fraudulent intent; and

(5) the statement related materially to the bankruptcy case.

*In re Beaubouef,* 966 F.2d at 178.

 False oaths include statements or omissions in the debtor's schedules as

[i]t is undisputed that the schedules filed by [Debtors] constitute statements under oath within the meaning of § 727(a)(4)(A). Bankruptcy Rule 1008 requires that "[a]ll petitions. lists, schedules, statements or financial affairs, [etc.] shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."

*Id.* and n. 2. Further, the existence of more than one falsehood, together with the failure to clear up all the inconsistencies when filing amended schedules, may constitute reckless indifference to the truth, and, therefore, the requisite intent to deceive. *Id.; see also, In re Gonzalez,* 92 B.R. 960.

 The instant record indicates the following pattern of material omissions [7] on the debtors' schedules and amended schedules which were made under oath:

(1) failure to correctly list the Buckman lawsuit on both the original Chapter 13 schedules and Chapter 11 schedules;

(2) Peggy Oldendorf's interest in the Succession was originally listed as an "equitable or future interest" even though a Judgment of Possession had been entered in the Succession placing her in ownership of an undivided interest

in the property long before the Debtors' bankruptcy proceedings were initiated;

(3) on the amended schedules filed on June 25, 1992, Peggy Oldendorf's interest was listed under "other contingent or unliquidated claims" but there is no description of what assets were inherited, where the assets are located or what happened to them. Further, no mention was made of the Briarwood real estate sale for $55,000.00 and the power of attorney given to Peggy Oldendorf's father, Calvin Pflug, in May 1992. Even if the Debtors were unsure of the effect of the Judgment of Possession, the sale of this property should have made them aware that the assets from the succession of Peggy Oldendorf's mother were not contingent and not unliquidated;

(4) the debtors failed to file amended schedules to reflect the $5,474.77 check from Calvin Pflug for sale of the Briarwood real estate; and

(5) Debtors failed to disclose requisite information on their Statement of Financial Affairs in the Chapter 7 proceedings.

Based on such evidence, Plaintiff Buckman made a prima facie case under § 727(a)(4) that the "untruths" in the Debtors' schedules were not the result of an honest mistake or inadvertence, but rather showed the Debtors' reckless indifference to the truth meant to mislead the court and the creditors. It was then up to the Debtors to offer credible evidence in response. *In re Reed,* 700 F.2d 986, 992 (5th Cir.1983). However, the Debtors failed to do so. Peggy Oldendorf did not even testify at Trial. Thus, Debtors could not prevail. *Id.*

B. *The denial of Debtors' discharge under § 727(a)(4)(A) alone is appropriate; however, denial of Debtors' discharge is also appropriate under § 727(a)(2)(B).*

The bankruptcy court also found that Buckman proved the elements of

---

**7.** In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. The subject matter of a false oath is "material" and thus sufficient to bar

discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. *In re Beaubouef,* 966 F.2d at 178.

§ 727(a)(2)(A) by a preponderance of the elements as set forth in *In re Chastant,* 873 F.2d 89, 91 (5th Cir.1989). The bankruptcy court reasoned:

> The debtors failed to list the assets inherited by Peggy Oldendorf in her schedules, despite the admonition at the creditors' meeting on May 28, 1992 to do so. Under the totality of the circumstances, this constitutes concealment of the debtors' property with intent to hinder, delay or defraud a creditor or officer of the estate.

(*See* Rec. Adversary No. 92–1288–JAB, Doc. No. 19, Bankruptcy Court Memorandum Opinion, p. 11).

This court finds that the bankruptcy court erred in applying § 727(a)(2)(A) because the section deals with property of the debtor which has been "transferred, removed, destroyed, mutilated or concealed" ... "within one year *before* the date of filing of the petition." While there is a serious question as to why Debtors failed to list assets inherited by Peggy Oldendorf, there was no evidence that such assets "transferred, removed, destroyed, mutilated, or concealed" one year *before* the date of filing of the petition.[8]

 Nevertheless, this court finds that § 727(a)(2)(B) applies to bar the Debtors' discharge. This particular section prohibits discharge when the Debtors have "transferred, removed, destroyed, mutilated, or concealed" ... "property of the estate, after the date of filing of the petition." The evidence clearly shows that Debtors sold the Briarwood real estate after the filing of their petition and *without* the knowledge of the creditors and the bankruptcy court. Further, under the totality of the facts and circumstances of this case, this court finds that this sale created a presumption of an actual intent to defraud, thus establishing a prima facie case and shifting to the Debtors the burden of demonstrating that they lacked

fraudulent intent.[9] At Trial, Debtors simply failed to do so.

### III. Conclusion

For the reasons given above, the court **AFFIRMS** as modified the Judgment of the bankruptcy court, finding that the Debtors are not entitled to discharge under 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4)(A). The Appeal of the Oldendorfs is accordingly DISMISSED.

---

8. While the failure to list these assets does not make § 727(a)(2)(A) applicable, the court found that such failure was included in the pattern of material omissions which made § 727(a)(4)(A) applicable to bar discharge. (*See* discussion of same, pp. 105–06, *supra*).

9. Constructive fraudulent intent cannot be the basis for denial of discharge. However, because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances. *In re Chastant,* 873 F.2d 89, 91 (5th Cir.1989).