In the Matter of Houston David HUGHES, Sr., Debtor.

Robert E. TILLERY, Plaintiff,

v.

Houston David HUGHES, Sr., Defendant,

FIRST UNION NATIONAL BANK OF NORTH CAROLINA, Plaintiff,

v.

Houston David HUGHES, Sr., Defendant.

Bankruptcy No. 94–10665–JAB.
Adv. Nos. 94–1127, 94–1129.

United States Bankruptcy Court, E.D. Louisiana.

July 18, 1995.

Merrill T. Landwehr, Landwehr & Hof, New Orleans, LA, for defendant/debtor.

Xenia H. Tillery, Baton Rouge, LA, for Robert E. Tillery.

Edward Arnold, III, Adams & Reese, New Orleans, LA, for plaintiff/First Union Nat. Bank of North Carolina.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This adversary proceeding was tried on March 3, 1995 on the consolidated complaints of First Union National Bank of North Carolina ("First Union") and Robert E. Tillery ("Tillery") objecting to the debtor's discharge under various subsections of Section 727 of the Code, 11 U.S.C. § 727. At the conclusion of the trial, the court found in favor of the debtor/defendant as to the portions of the complaints relating to Section 727(a)(5), and dismissed those portions of the complaint. The remaining grounds for discharge were taken under advisement. At issue, therefore, are the plaintiffs' complaints objecting to the debtor's discharge under Section 727(a)(2), (a)(3), and (a)(4). After reviewing the pleadings, the evidence at trial, and the arguments of counsel, the court makes the following determinations.[1]

## I. FACTS

### A. Procedural background.

1. On March 2, 1994, the debtor, a practicing dentist, filed a voluntary petition under Chapter 7. He also filed a Statement of Financial Affairs and Schedule of Assets and Liabilities signed under penalty of perjury. On May 24, 1994, a Rule 2004 Examination was conducted of the debtor by First Union and Tillery, creditors and plaintiffs in this adversary proceeding. On June 6, 1994, First Union timely filed a complaint to deny debtor's discharge. On the same day, Tillery filed a similar complaint also seeking to deny the debtor's discharge under Section 727. On June 27, 1994, the debtor filed an Amendment to Schedules amending Schedule "F" and the Summary of Schedules to include James H. Brown as a creditor holding an unsecured non-priority claim in the amount of $705,325.39. Pursuant to a minute entry dated August 10, 1994 the above-referenced adversary proceedings were consolidated for trial purposes only.

---

1. This memorandum opinion constitutes the court's findings of facts and conclusions of law in accordance with Bankruptcy Rule 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2).

B. *Debtor's history of transfers and/or concealment of property.*

2. A review of the petition, the Statement of Financial Affairs and Schedule of Assets and Liabilities filed by the debtor would lead one to believe that the debtor was a self-employed dentist operating as a sole proprietor with no assets, who resided in Metairie, Louisiana in a rented residence, drove a rental car, and had no income except that from corporations which paid his living expenses. A closer examination, however, of all the facts reveals a totally different picture.

3. First Union is the successor in interest to Northwestern Bank and is a creditor of the debtor's estate pursuant to a judgment rendered by the Superior Court for the County of Burke, State of North Carolina on September 1, 1981 in the principal amount of $39,000 together with interest thereon at the rate of 12% per annum from November 9, 1979, until paid together with a sum equal to 15% additional on both principal and interest due as attorney's fees, and costs. (Pl. 8, Pre–Trial Order, Statement of Uncontested Material Fact No. 2 (hereinafter designated as "Uncontested Fact"); P.Ex. 33.)

4. Tillery is a creditor of the debtor's estate pursuant to a judgment rendered by the 21st Judicial District Court for the State of Louisiana on December 11, 1986 in the principal amount of $15,521.43 together with interest at the rate of 12% per annum from October 27, 1986, plus costs. (Uncontested Fact No. 4; P.Ex. 2).

5. On July 27, 1979, the debtor and his former spouse transferred the property at 25602 Colonial Drive, Denham Springs to H. David Hughes, D.D.S., a Professional Corporation. Plaintiff's Exhibit 5; Testimony of H.D. Hughes at p. 129. The debtor continued to live at that address until at least eight months prior to the filing of the bankruptcy petition.

6. This professional corporation is listed in the debtor's schedules under Item 12 of Schedule B with an interest of "0.00". (P.Ex. 37). The debtor's testimony with respect to the ownership of the stock in this entity is vague. (Pl. 18, Transcript of March 3, 1995 ("Trans.") at 127–128).

7. The records of the Louisiana Secretary of State reflect that at the time of filing the debtor was an officer for that entity. (P.Ex. 36). At the trial, the debtor testified that it was possible that he was still listed as an officer of that entity. (Trans. at 122).

8. This entity also owns the property described in Plaintiff's Exhibit 30 which includes the real property identified as municipal number 1310 S. Range, Denham Springs and numerous items of movable property incidental to the practice of dentistry. (P.Ex. 30; Trans. at 131–32).

9. The office building at 1310 S. Range is the location in which the debtor has provided dental services for several entities through purported consulting agreements. (Trans. at 77–82 and 132).

10. Associated Family Dentistry, Inc. is a Louisiana corporation which was incorporated by the debtor in 1985. Uncontested Fact No. 15.

11. Prior to September of 1994 the debtor was the president and agent for service of process for Associated Family Dentistry, Inc. Uncontested Fact No. 13.

12. All of the debtor's personal living expenses including clothing, meals, entertainment, transportation, household, and tuition expenses are paid for by third parties including Associated Family Dentistry, Inc. Uncontested Fact No. 17.

13. At the time of filing, the debtor owned one share of Associated Family Dentistry, Inc. Uncontested Fact No. 14. The remaining shares as of the date of filing were owned by the debtor's second wife, Tina Farachi Hughes. *Id.* At trial the debtor attempted to contradict this uncontested issue of material fact and denied any ownership of stock in Associated Family Dentistry, Inc. (Trans. at 152). The court does not find this testimony credible and does not accept the denial.

14. H. David Hughes, D.D.S., a Professional Corporation, is also the record owner of the real property identified by municipal address 8196 Hermitage, Denham Springs

which is currently occupied by the debtor's former wife, Gloria McDuffy Hughes. (Trans. at 130; P.Ex. 4).

15. The debtor has never entered into a community property settlement with his first wife, Gloria McDuffy Hughes. (Trans. at 130–131).

16. The debtor testified that he was providing dental services to patients of Affiliated Family Dentistry, Inc. at the 1310 S. Range location pursuant to a consulting agreement with Products Marketing, Inc. and Management Company, a Cayman Islands Corporation, which agreement had been assigned to Enregle, an Arizona Trust, and then assigned again to Affiliated Family Dentist, Inc. (Trans. at 86).

17. Under the debtor's so called consulting agreements, all of the debtor's personal living expenses are either paid for or reimbursed by third parties. The debtor for at least the past ten years has received no reported salary or wages from any person or entity as a consequence of his providing professional dental services. (Uncontested Fact No. 11; Trans. at 77–82).

18. The debtor's testimony with respect to the consulting agreements is contrary to the testimony of the debtor's accountant and the debtor's tax returns. The debtor's accountant, whose testimony was submitted pursuant to deposition, clearly testified that the tax returns of the debtor were prepared as a sole proprietorship and that the corporate entities of Associated Family Dentistry, Inc. and H. David Hughes, D.D.S., A Professional Corporation, were totally disregarded. (P.Ex. 50, Deposition of Robert Slokum at 12–15). A review of the tax returns clearly shows that the debtor took mortgage interest deductions with respect to the property located at 25602 Colonial Drive and 8196 Hermitage. Additionally, the debtor paid self-employment taxes for 1991, 1992, and 1993. (P.Ex. 49).

C. *Debtor's failure to keep sufficient records.*

19. The debtor maintains no receipts, records, or ledgers with respect to his personal living expenses which were paid for by third parties. Uncontested Fact No. 12.

20. In response to a request for documents in connection with a Rule 2004 examination, the debtor produced three documents which were copies of tax returns for the calendar years 1991, 1992, and 1993. The tax returns were admitted into evidence as Plaintiff's Exhibit No. 9. Subsequently, three additional documents were forwarded to counsel for the plaintiff on February 23, 1995 and admitted into evidence as Plaintiff's Exhibit No. 42. These six documents were the only documents produced by the debtor prior to trial.

21. On October 25, 1994, a joint deposition of Associated Family Dentistry, Inc. was noticed by First Union and Tillery pursuant to Federal Rule of Civil Procedure 30(b)(6). In connection with that deposition, a subpoena for records of Associated Family Dentistry, Inc. was properly served upon the debtor as agent for service of process of Associated Family Dentistry, Inc. Uncontested Fact No. 9. While the debtor did appear at the deposition and answer questions, no documentation was produced in connection with that testimony. (Trans. at 26).

22. The only other documents produced at any time were certain business records of Associated Family Dentistry, Inc. intended to be offered as exhibits at trial which primarily consist of bank statements and receipts of Associated Family Dentistry, Inc. purporting to be expenses of the debtor. These records are not complete and do not fulfill the debtor's requirement with respect to the maintenance of books and records sufficient from which the court or the debtor's creditors can reconstruct the debtor's financial affairs with substantial completeness and/or accuracy.

23. The debtor failed to produce any other documentation or information with respect to his relationship to Dr. Tyronne G. Clark & Associates, Denta–Care, a Professional Dental Corporation, or Associated Family Dentistry, Inc. H. David Hughes, D.D.S., a Professional Corporation. The debtor further failed to provide any information with respect to a comprehensive settlement agreement entered into with the Internal Revenue

Service on the eve of the bankruptcy filing. Only upon the post-petition discovery and subsequent demand by the plaintiffs with respect to releases of federal tax liens was any information provided. A review of the information provided by the debtor to the plaintiffs clearly shows that it is incomplete and that it does not reflect any acceptance on the part of the Internal Revenue Service.

24. The debtor has also failed to maintain sufficient information to explain the basis for the tax returns produced by the debtor for the calendar years 1991, 1992, and 1993. The tax returns produced by the debtor in connection with the 2004 examination, Plaintiff's Exhibit 9, were altered to delete the debtor's address for two years and to consolidate certain income apparently reported on Schedule E into Schedule C income. (See P.Ex. 49 compared with P.Ex. 9). Schedules C and SE with respect to all the above-referenced years were never produced by the debtor, although the returns provided by the debtor's accountant included the schedules. (P.Ex. 49; Trans. at 93–40). The debtor could not explain either the alterations or the sources of income which were affected.

D. *Debtor's false oath.*

The debtor's schedules include several material omissions as follows:

25. He failed to list his involvement in Tyronne G. Clark & Associates, Denta–Care, A Professional Dental Corporation. Within the reporting period required by the Code, the debtor was the secretary of that entity and also functioned as its CEO. (Trans. at 49–51). Within the reporting period required by the Code, this entity was the subject of extensive litigation and an order of rehabilitation issued by the Commissioner of Insurance for the States of Louisiana. (P.Ex. 29). The Commissioner of Insurance had also filed suit against the debtor which included allegations of theft. (P.Ex. 2). The debtor's own testimony reveals that this omission was intentional as it was based upon information from prior counsel that the lawsuit was non-dischargeable. (Trans. at 35, 37, 95, 100).

26. The debtor failed to list several other lawsuits to which the debtor was a party involving James H. Brown as Commissioner of Insurance, Tyronne G. Clark & Associates, Denta–Care, and/or Samuel Gray Hodges and Arriba Investments. These lawsuits include the suits referenced in the Plaintiff's Exhibits 2, 8, 10, 17, and 29.

27. Debtor failed to correctly list his address at the time of the filing of the Chapter 7 petition. The petition lists his address as 5100 Haring, Metairie, Louisiana. (Case No. 94–10665–JAB, Pl. 1). Other than the petition and the 1993 tax return prepared post-petition, no other documents reflect or evidence this address as being the debtor's residence. (Trans. at 33–34). To the contrary, all of the other documentation evidences that the debtor's address prior to the filing of the bankruptcy petition was 25602 Colonial Drive, Denham Springs which is in Livingston Parish, Louisiana. This evidence includes telephone listings, driver's license information, and expense items submitted in the debtor's own exhibits. (Trans. at 37, 67–68). Copies of pleadings filed in state court suits show debtor's domicile as of October 4, 1993 and July 11, 1994 was in Livingston Parish, Louisiana. (P.Ex. 8 and 10). A release of tax lien and offers of compromise with the IRS show debtor's address as being in Denham Springs. (P.Ex. 41 and 42).

28. The debtor claimed he resided at 5100 Haring Court in Metairie for eight months prior to the date of filing and admitted that he moved there for the purpose of establishing residency in order to file bankruptcy in New Orleans. (Trans. at 31, 35).

29. Even if the court ignored all the other evidence and accepted the debtor's contention that he was really domiciled in the New Orleans area rather than Livingston Parish, there is no explanation or excuse for the debtor not listing the previous address he had in Livingston Parish in his statement of financial affairs. Item 15 of the statement of financial affairs lists as a prior address only an address in Florida. (P.Ex. 37).

30. The debtor failed to disclose any and all entities with whom he has purportedly operated under consulting agreements within the applicable pre-petition period required by the Code. The debtor's testimony with re-

spect to his consulting agreement is contrary to the statements in the debtor's schedules that he is self-employed. (P.Ex. 37 at 1). The schedules as filed by the debtor do not indicate any sources of income from any other third party.

31. The debtor failed to list other corporation or entities in which he has been an officer or director within the two years prior to the filing of the bankruptcy petition including: Associated Family Dentistry, Inc.; H. David Hughes, D.D.S., A Professional Corporation; Dr. Tyronne G. Clark and Associates, Denta–Care, A Professional Dental Corporation; Drs. Hughes, Teel, and Benton, Inc.; H. David Hughes, a Professional Corporation; Associated Family Dentistry, A Professional Dental Corporation; Inuco; and Products Marketing, Inc. and Management Company. (See P.Ex. 15, 16, 29, 35, and 36; Trans. at 133).

32. The debtor checked "none" on the financial affairs statement calling for information as to safety deposit boxes (P.Ex. 37), thus failing to disclose a safety deposit box maintained at the Hibernia National Bank in the debtor's name. (Trans. at 107).

33. The debtor failed to list his ownership of the trade name Denta–Care. (Trans. at 104, 106).

34. The debtor failed to disclose his interest in the Enregle Trust which he describes as a "shell trust" that he does not own, but does "own the use of". (Trans. at 142–44).

35. The debtor failed to correctly list his accountants. (Trans. at 146; P.Ex. 37).

36. The debtor failed to list as an executory contract the lease he had assumed on the Mercedes automobile that debtor drives. (Trans. at 185–86).

## II. ANALYSIS

### A. *Burden of proof*

■ The elements of an objection to discharge under Section 727 must be proved by a preponderance of the evidence. *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992). *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### B. *Section 727*

The defendants seek denial of the debtor's discharge under 11 U.S.C. § 727(a)(2), (a)(3), and (a)(4). These sections provide in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, . . ., from which the debtor's financial condition or business transactions might by ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . . . .

Application of the foregoing law to the above facts convinces the court that the debtor should be, and is, denied a discharge under all three subsections of Section 727.

### C. *Section 727(a)(2)(A)—intent to defraud, transfer property of the estate*

The purpose of Section 727(a)(2) is to deny a discharge to those debtors who, intending to defraud, transfer property which would have become property of the bankrupt estate. *In re Chastant,* 873 F.2d 89, 90 (5th Cir.1989). The creditor must prove four elements for a discharge to be denied under Section 727(a)(2)(A) as follows: (1) a transfer of property; (2) belonging to the debtor; (3) within one year before the filing of the petition; (4) with intent to hinder, delay, or

defraud a creditor or officer of the estate. *Id.*

■ Evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge. Constructive intent is insufficient. *Id.* at 91. Actual intent, however, may be inferred from the actions of the debtor and may be proved by circumstantial evidence. *Id.* at 91.

■ On its face, Section 727(a)(2)(A) addresses only transfers or concealment of property occurring within a year before the filing of a bankruptcy petition. However, the doctrine of continuing concealment provides that the continuation of a concealment of an interest in an asset that continues, with the requisite intent, into the year prior to the bankruptcy filing constitutes a concealment within the reach of Section 727(a)(2)(A). *In re Olivier,* 819 F.2d 550, 555 (5th Cir.1987); *In re Kauffman,* 675 F.2d 127, 128 (7th Cir.1981); *In re Penner,* 107 B.R. 171, 173 (Bankr.N.D.Ind.1989).

Circumstantial evidence and/or inferences drawn from the debtor's course of conduct can support a finding that the debtor has acted with intent to hinder, delay or defraud his creditors. *In re Chastant,* 873 F.2d at 91; *Oldendorf v. Buckman,* 173 B.R. 99, 106 n. 9 (E.D.La.1994). The retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer. *In re Olivier,* 819 F.2d at 553, *quoting, EFA Acceptance Corp. v. Cadarette (In re Cadarette),* 601 F.2d 648, 651 (2nd Cir.1979).

■ In this case, the plaintiffs have proved sufficient facts from which the court can conclude that the debtor concealed and/or transferred the properties at 25602 Colonial Drive, 1310 S. Range, and 8196 Hermitage, Denham Springs to H. David Hughes, D.D.S., a Professional Corporation, with intent to defeat the collection efforts of First Union and Tillery. The debtor's entire course of conduct evidences an intent to hinder, delay, or defraud these two judgment-creditors as well as other creditors. The continued use of two pieces of property by the debtor and continued use of the other parcel by the debtor's first wife is strong

evidence of the intent to defraud. The debtor's enjoyment of the benefits of ownership of these properties and concealment of his true stock ownership and control of the professional corporation that was the record owner continued concealment into the one year period prior to the filing of the petition.

This was an elaborate scheme concocted years ago and perpetuated over a period of years by the debtor. As early as 1985 several corporations were recognized by Judge Parker as alter egos of the debtor. After that the debtor created other entities that he controlled. Large amounts of funds were funnelled through a maze of corporate entities but the net benefit accrued to the debtor. All of this was a more sophisticated and more egregious concealment than the case of *In re Olivier,* 819 F.2d 550 (5th Cir.1987), involving transfer of a house seven years before filing with a continued retention of a secret beneficial interest, in which the Fifth Circuit held that the continuing concealment doctrine would be followed in discharge cases under Section 727(a)(2)(A).

## D. *Section 727(a)(3)—failure to keep sufficient records*

■ Under 11 U.S.C. § 727(a)(3), a debtor may not be granted a discharge if the debtor's financial records do not enable the court to evaluate the debtor's current financial condition and reconstruct the debtor's business transactions for a reasonable period of time with substantial completeness and accuracy. *In re Bailey,* 145 B.R. 919, 924 (Bankr. N.D.Ill.1992); *In re Hubbard,* 96 B.R. 739, 741 (Bankr.W.D.Tex.1989). The purpose of this section of the Code is to give the trustee, creditors, and the court complete and accurate information concerning the status of the debtor's affairs and financial history, and to test the completeness of the debtor's disclosure requirements to a discharge. *Miller v. Pulos (In re Pulos),* 168 B.R. 682, 690 (Bankr.D.Minn.1994). The debtor's intent is irrelevant with respect to a Section 727(a)(3) objection to discharge. *Id.* The disclosure of the debtor's financial condition is a prerequisite to obtaining a discharge. *Id., citing, Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir.1992). The Code does not require

an impeccable system of bookkeeping, but does require that the records maintained sufficiently identify transactions so that intelligent inquiry can be made. *Id.* The completeness and accuracy of a debtor's records are determined on a case-by-case basis, taking into account the size and complexity of a debtor's business. *In re Bailey,* 145 B.R. at 924. The court has reasonably wide discretion in determining whether the debtor's books and records are sufficient to trace the debtor's financial history. *In re Dias,* 95 B.R. 419, 422 (Bankr.N.D.Tex.1988). The plaintiff seeking denial of discharge has the burden of proving the inadequacy of the debtor's records. *Miller v. Pulos (In re Pulos),* 168 B.R. at 690. Once the plaintiff has shown that the debtor's records are inadequate, the burden then shifts to the debtor to prove that the failure to keep adequate records was justified under the circumstances. *Id.* If the lack of records is not adequately explained, the debtor is not entitled to a discharge. *Id.*

■ The debtor in this case is a licensed pharmacist, real estate agent, dentist, and a well-educated, sophisticated businessman. His explanation as to why better records were not kept lacks plausibility. For example, the debtor's testimony that he omitted information as to the lawsuit by the insurance commissioner on advice of his prior counsel as to the non-dischargeability of such debts falls on deaf ears. The debtor's reliance upon prior counsel is misplaced. *See In re Tully,* 818 F.2d 106, 111 (1st Cir.1987) (Reliance upon advice of counsel is no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules). The creditors of this estate are entitled to know about the pendency of all actions within the applicable period. *In re Tully,* 818 F.2d at 111. ("A petitioner cannot omit items from his schedules, force the trustee and the creditors, at their peril, to guess that he has done so—and hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack.")

The other failures to keep, or failure to furnish, records detailed in Findings of Fact

Nos. 19–24, *supra,* at 905–906, prove by a preponderance of the evidence that debtor should be denied a discharge under Section 727(a)(3).

**E. Section 727(a)(4)—false oath**

In order to prevail under section 727(a)(4)(A), the creditor must prove: (1) the debtors made a statement under oath; (2) the statement was false; (3) the debtors knew the statement was false; (4) the debtors made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Beaubouef, supra* at 178; *In re Dunbar,* 99 B.R. 320, 322 (Bankr.M.D.La.1989).

The success of the bankruptcy system hinges upon a debtor's veracity and willingness to make full disclosure. *Owensboro National Bank v. Gipe (In re Gipe),* 157 B.R. 171, 178 (Bankr.M.D.Fla.1993). "Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight". *In re Tully,* 818 F.2d at 110. False oaths sufficient to justify denying a discharge include: (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings. *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992); 4 *Collier on Bankruptcy* ¶ 727.04, at 727.59 (15th ed. 1995).

The subject matter of a false oath is "material" and thus sufficient to deny discharge if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence or disposition of his property. *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984), *citing, In re Steiker,* 380 F.2d 765, 768 (3rd Cir.1967).

■ The purpose of Section 727(a)(4)(A) is to ensure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of the examinations or investigations to determine whether the information provided is true. *Oldendorf v. Buckman,* 173 B.R. at 104. Even if assets are worthless or invaluable to creditors, the debtor has an obligation

of full disclosure. *Id.* at 105. Furthermore, the existence of more than one falsehood, together with the failure to clear up all the inconsistencies when filing amended schedules, may constitute reckless indifference to the truth, and, therefore, the requisite intent to deceive. *Id.* As noted by the court in the case of *In re Chalik,* 748 F.2d at 618, "[t]he recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that they admittedly omitted or falsely stated information concerning a worthless business relationship or a holding; such a defense is specious".

■ The debtor's failure to disclose his business involvement with several corporations, failure to list numerous lawsuits, failure to list his correct address, and other failures enumerated in Findings of Fact Nos. 25–36, *supra,* at 906–907, are material to a determination of the debtor's true financial condition. The cumulative effect of all these initial omissions, and the failure to clear up the various lawsuits with the filing of the amended schedules, evidence a reckless disregard for the truth and furnish the requisite intent to deceive. This disregard was simply reinforced by the debtor's testimony at trial. The evidence shows a knowing and fraudulent making of a false oath or account prohibited by Section 727(a)(4).

### III. CONCLUSION

A finding sufficient to justify denial of a discharge under any one of the subsections of Section 727 is sufficient to deny a discharge. *In re Beaubouef,* 966 F.2d at 177; *In re Reed,* 700 F.2d 986 (5th Cir.1983); *Oldendorf v. Buckman,* 173 B.R. at 104. After a full review of the evidence, and considering the debtor's lack of credibility in his various explanations, the court is convinced that the debtor should be denied a discharge on all three grounds.

A central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt". *Grogan v. Garner,* 111 S.Ct. at 659. This "fresh start" policy is to be limited to the "honest but unfortunate debtor". *Id.*

This debtor does not fall within that class of honest debtors entitled to a discharge. His discharge is therefore denied under Sections 727(a)(2)(A), (a)(3), and (a)(4).

Judgment will be entered in accordance with this memorandum opinion.

### JUDGMENT

For the reasons assigned in the foregoing memorandum opinion issued this date, accordingly,

**IT IS ORDERED, ADJUDGED, AND DECREED** that judgment be entered in favor of the plaintiffs, Robert E. Tillery and First Union National Bank of North Carolina, and against the debtor, Houston David Hughes, Sr., on the complaints of Robert E. Tillery and First Union National Bank of North Carolina objecting to the debtors' discharge under 11 U.S.C. § 727.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the discharge of Houston David Hughes, Sr. be and it hereby is **DENIED** pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4).